Perry vs. The State.

JOSEPH PERRY, Plaintiff in Error, *vs.* THE STATE.

ERROR TO CIRCUIT COURT, JEFFERSON COUNTY.

Heard June 29.]             [Decided July 1, 1859.

*Constitutional Law—Jury—County Supervisors—Counties.*

The act providing that the judge of the circuit court of Jefferson county, should " select from the lists prepared by the last board of 'supervisors, the grand and petit juiors," is not in violation of the constitutional provisions relating to trials by jury.

To preserve the right of trial by jury it is not necessary to continue any particular mode of disignating jurors, though such mode was in force at the time of adoption of the constitution; but the mode is within the control of the legislature.

Where an act required the selection of jurors to be made "from the lists prepared by the *last* board of supervisors," it will be complied with by making selections from the lists last prepared.

The board of supervisors is a corporate body with perpetual succession, and continues from year to year, though the persons composing it may change.

Where the legislature had unconstitutionally detached five towns from Dodge county, and attached them to Jefferson, those towns formed no part of Jefferson county, from which jurors of the latter county should be taken.

Perry vs. The State.

*The State ex rel. Brayton et al. vs. Merriman*, 6 Wis. 14, approved.
A jury selected according to law is a constitutional jury as equally as one drawn by lot.

The facts in this case are sufficiently stated in the opinion of the court.

*D. F. Weymouth*, for the Plaintiff in Error.

*G. Bouck, Att'y Gen.*, for the State.

*By the Court*, PAINE, J. The plaintiff in error was indicted, tried, and convicted of murder at the February term, 1858, of the Jefferson circuit court. There were challenges to the array, a motion to quash, and a motion in arrest of judgment, and exceptions were taken to the rulings of the court on these various motions, which were overruled, and the prisoner sentenced. The case is brought here by a writ of error.

The principal ground of error relied on is, that the grand jury which indicted, and the petit jury which tried, were not lawful juries. These juries were selected and summoned under the provisions of an act of the legislature, approved February 4, 1858, and published as chap. 7 of the Private and Local Laws of that year, by which the judge of the circuit court of Jefferson county, was authorized to " select from the lists prepared by the last board of supervisors" of that county, the grand and petit jurors for the February term of the court. There is no intimation that the judge who selected was not entirely just and impartial; but it was contended on the argument that in order to constitute a lawful, constitutional jury, it must not be "selected," but must be drawn by lot. In other words, that the drawing of the names by lot or chance, so as to preclude the idea of " selection," constitutes one of the elements of a jury, so that any law providing for the " selection" of a list of jurors to serve at a term of court, would violate the constitutional provisions for the

preservation of the jury trial.    We do not think this position can be sustained.

It was urged that this drawing of jurors by lot became a part of the law of England before the revolution, and was, therefore, a part of the law of this country at that time, and was universally practiced; and that being so, the provisions in the national and state constitutions for the preservation of the trial by jury, would invalidate any law by which the persons to be summoned as jurors could be "selected" without being drawn.    But we think this argument is based on a misapprehension of the law, and that instead of juries having been drawn by lot, they have, to a very great extent been *selected,* both in this country and in England, since as well as before the revolution.

It is true that this state and others, have by legislation provided a mode of drawing by lot the names of the grand and petit jurors to serve at each term of the court.    But before such legislation, they were almost universally *selected* by the sheriff.    Hence, in all the books on the subject of challenges to the array, we find the partiality or interest of the sheriff, in respect to the matter to be tried, constituting one of the most prominent reasons for such challenge.    We do not say that the mode required by our general statutes on the subject, is not a safer, and better mode; but we think the manner of designating the persons who are to act as jurors at any term of court, is clearly within the control of the legislature; and that the constitutional right of every accused person to a jury trial, is not impaired merely because those persons have been selected instead of drawn.    Or, in other words, we think that in order to preserve the right of trial by jury, it is not necessary to preserve any particular mode of designating jurors, even though such mode may have been in force at the time of the adoption of the constitutional provision.    All that the right includes, is a fair and impartial jury, not the particular mode

of designating it. And even by the law as it now is, the supervisors " select" the persons on the list from which the regular panel of grand and petit jurors are drawn, and whenever there is a deficiency, the sheriff selects *talesmen.* So we think that the law never has been such as to exclude " selection" in furnishing a jury.

By the terms of the act in question, the judge was required to select " from the list made by the last board of supervisors in said county," &c. The selection, in fact, was made from the list made by the board at its last session, it being, however, the board elected for that year. The counsel for the plaintiff in error, contended that 'the words " last board," required the selection to be made from the list prepared by the board elected for the previous year. But we think not. This construction would imply that the board changes each year, whereas, it is a corporate body, with perpetual succession, and although new persons are elected to compose the board each year, yet it is the same board that continues from year to year. We think the evident intent of the statute was that the judge should select from the list prepared at the last meeting of the board, before the time when he was to select. And though that idea might have been expressed with more technical precision, we still think that to be the only fair construction of it as it now stands.

The only other objection urged, was that the jury must be taken from the body of the county; and that in the list from which the juries were selected in this case, the five towns which the legislature attempted to detach from Dodge county and annex to Jefferson, were not represented. But conceding, for the purposes of this case, that in order to have obtained a legal jury, all the towns in Jefferson county should have been represented on the list, we still think those towns were properly left out. In the case of *The State ex rel, Brayton and Waldo vs. Merriman*, 6 Wis. 14, this court

held that *prima facie* Dodge county contained only nine hundred square miles, and that the act by which that county was divided, would, therefore, be held unconstitutional until it was made to appear, by some competent proceeding, that the government surveys were inaccurate, and Dodge county capable of division. No proceeding of the kind has been instituted, and we must, in obedience to that decision, hold the five towns mentioned, to have belonged in Dodge county, and not in Jefferson, at the time this jury was selected.

It was suggested by counsel that the act under which this jury was selected, was a general law, and had not been published at the time the judge below acted under it, and was, therefore, not in force. But we find that it was published in pursuance of law before that time, and that even conceding it to be a general law, as claimed, it was in force.

We think there was no error, and the judgment below must be affirmed.